

**SO ORDERED.**

**SIGNED this 07 day of July, 2010.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| CRAIG L. ADAMS and<br>MONICA L. ADAMS, | 04-003875-5-SWH |
| DEBTORS | |

ORDER FINDING OCWEN LOAN SERVICING LLC
IN CONTEMPT OF THE DISCHARGE INJUNCTION
AND THE COURT'S ORDER OF MAY 23, 2008
AND AWARDING DAMAGES AND SANCTIONS

The matter before the court is the chapter 13 debtors' motion for Ocwen Loan Servicing LLC ("Ocwen") to show cause why it should not be held in contempt for violating the terms of an order entered in this court on May 23, 2008, which 1) declared that all mortgage payments due from the debtors to Ocwen were current as of that date and 2) enjoined any action to collect sums discharged. The motion for show cause was filed on September 12, 2008, and the hearing on that motion was continued multiple times at the request of the parties. A hearing ultimately took place in Raleigh, North Carolina, on May 26, 2010. At the conclusion of the hearing, the court announced that it had found Ocwen in contempt of the May 23, 2008 order, and took the damages issues under

advisement. The court requested counsel to provide it with the parties' respective damages calculations, and both parties have done so.

## Background

The debtors filed a petition under chapter 13 on October 26, 2004. Ocwen, the debtors' mortgage servicer, was included on their schedules as a secured creditor holding a first lien on the debtors' residence. The debtors' discharge was entered on April 25, 2008. On April 29, 2008, the debtors filed a motion seeking a declaration that all payments due from the debtors to Ocwen on their residential mortgage were current (the "Mortgage Declaration Motion"). Ocwen was properly served with the Mortgage Declaration Motion, but did not respond.[1] The May 23, 2008 order entered as a result of that motion declared the Ocwen indebtedness current and also provides:

> Ordered that in the event the holder of the mortgage, the current servicer or any subsequent assignee or holder of the mortgage debt attempts to collect any of these discharged principal payments, interest, fees or expenses, such action shall be deemed to be a willful violation of the discharge injunction and contempt of the orders of this Court; and that such action shall give the right to the Debtors to pursue a proceeding before this Court for contempt and appropriate sanctions and such other state and federal statutory remedies as may be available to the Debtors and that this Court specifically retain jurisdiction over such claim or claims.

In re Adams, Order Declaring Mortgage Payments Current, Case No. 04-03875-5-ATS (May 23, 2008). The debtors represent that they were, in fact, current at the time of the entry of the order. Ocwen contends that the debtors may not have been current at that time, but agrees that the issue is resolved, with finality, by entry of the May 23, 2008 order, which Ocwen did not appeal.

---

[1] The motion was served by regular mail on Ocwen at two addresses in Orlando, Florida, and on Ocwen's counsel in Charlotte, North Carolina. A second certificate of service, filed on May 8, 2008, states that on May 7, 2008, additional copies of the motion were served on Ocwen at the Florida addresses, this time by certified mail.

During the summer of 2008, the debtors obtained an appraisal of their residence and attempted to refinance their mortgage. They were turned down when, upon request of the proposed new lender, Ocwen transmitted a payoff statement and loan history that was replete with serious errors, most notably its report that the loan on the debtors' residence was in foreclosure. The parties agree that the loan was not then, and had never been, in foreclosure. Counsel for the debtors brought the errors to Ocwen's attention in a letter dated August 20, 2008, and requested that Ocwen correct them by 1) recalculating the loan from the date of the May 23, 2008 order; 2) correctly applying the payments made, and 3) issuing a correct payoff statement. Debtors' Mot. to Show Cause, Ex. B.

At the hearing, Ms. Adams testified that in addition to the letter her attorney sent to Ocwen, she also contacted Ocwen during the summer of 2008 to request the corrections, and Ocwen informed her that it was unaware of any discharge entered in the bankruptcy case. In response, Ms. Adams contacted her attorney and arranged to have him fax the discharge order and May 23, 2008 order to Ocwen. When Ms. Adams checked the status of her loan after having caused Ocwen to be provided with the bankruptcy documents, she determined that the loan continued to be reported in a foreclosure status. Ms. Adams again contacted her attorney, and the bankruptcy documents were faxed again. Once again, Ocwen did not respond.

Faced with Ocwen's failure to rectify its reporting, and its resulting effect on their ability to refinance their home, the debtors reopened the case and filed the motion to show cause, on September 12, 2008, to which Ocwen responded on September 30, 2008 by generally requesting a hearing "while it investigates the claims made by the [debtors]." On November 10, 2008, the hearing was continued on Ocwen's motion. Since the motion to show cause was filed, this matter

has been continued no less than thirteen times upon the parties' representations that they were attempting to reach an agreement to resolve the show cause motion. Ocwen has never filed a response to the show cause motion, nor denied violation of the May 23, 2008 Order or the discharge injunction. Ocwen has not offered an explanation in mitigation of its conduct at any point in this matter. It has instead allowed its conduct to speak for itself.

## Civil Contempt

The discharge injunction set forth in 11 U.S.C. § 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such discharge is waived." 11 U.S.C. § 524(a)(2). The May 23, 2008 order clearly deemed the debt current as of that date and specifically prohibited actions contrary to that conclusion, i.e. the collection of fees, costs and other amounts related to a non-current loan. The court ruled at the hearing that Ocwen was in contempt of both the discharge injunction and the May 23, 2008 order, and the basis of that ruling is set forth herein.

The Court of Appeals for the Fourth Circuit articulated the standard to establish civil contempt in Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (internal quotations omitted), as follows:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Each of these elements must be shown by clear and convincing evidence. Ashcraft, 218 F.3d at 301 (construing Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D.

Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)). It is not disputed that the court's order of May 23, 2008 is a valid decree of which Ocwen had actual knowledge. The Mortgage Declaration Motion was served upon Ocwen and its counsel of record on May 8, 2008, in accordance with the certificate of service filed by debtors' counsel. The discharge order was served by the clerk's office on all parties appearing on the creditor matrix, either by mail or electronically.[2] The uncontradicted testimony of Ms. Adams is that she had a telephone conversation with a representative of Ocwen concerning her discharge and the May 23, 2008 order, and that Ocwen was supplied additional copies of the discharge order and the May 23, 2008 order by her counsel during the summer of 2008. Both Ocwen and its counsel received notice of both the discharge and the May 23, 2008 order as exhibits to the show cause motion served on them on September 12, 2008. Counsel for Ocwen began to receive electronic notice of all filings in the case on September 30, 2008. Most importantly, Ocwen did not dispute actual knowledge of both orders at the hearing.

The May 23, 2008 order was in the debtors' "favor" in that it established that their mortgage payments were deemed current and specifically set forth that a violation of the order would be sanctionable. Ocwen not only violated the terms of that decree by continuing to assess discharged principal, fees and costs, but did so, knowingly, over a prolonged period of time even after such violations were brought to its attention by: 1) debtors' counsel, 2) the female debtor, and 3) the filing of the show cause motion. The debtors' testimony indicated that they suffered harm as a result of Ocwen's violation of both the May 23, 2008 order and the discharge injunction. They were unable to refinance their home at market rates because their credit report erroneously showed their

---

[2] The ordinary course of practice in the Eastern District of North Carolina is for the discharge order to be served, through the clerk's office, on all parties appearing on the creditors' matrix.

Ocwen loan in foreclosure; they incurred attorneys' fees to attempt to rectify the erroneous reporting and bring the matter to the court's attention; they incurred appraisal fees in their futile refinancing efforts; they spent time out of court trying to resolve the show cause motion and time in court during the hearing; and their credit was damaged by the detrimental reporting.

In the specific context of an alleged violation of the discharge injunction, bankruptcy courts increasingly also assess whether a creditor's actions evidence willfulness.  See, e.g., In re Dendy, 396 B.R. 171,178 (Bankr. D.S.C. 2008); In re Cherry, 247 B.R. 176,187 (Bankr. E.D. Va. 2000). The Dendy court held that to "hold a creditor in contempt [for violation of the discharge injunction], Debtors must demonstrate that the creditor willfully violated the discharge injunction, which is proved by showing that the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction."  396 B.R. at 178; see also Workman v. GMAC Mortgage, LLC (In re Workman), 392 B.R. 1890 (Bankr. D.S.C. 2007).   In Cherry, the court construed the test established by the Eleventh Circuit in In re Hardy, 97 F.3d 1384 (11th Cir. 1996), wherein that court of appeals held that under § 105, a defendant could be found in contempt for a violation of the discharge injunction if it "(1) knew that the [discharge injunction] was invoked and (2) intended the actions which violated the [injunction]." Hardy, 97 F.3d at 1390, quoted in Cherry, 247 B.R. at 187; see also Almond v. Ford Motor Co. (In re Almond), 2007 WL 1345224 at *5 (Bankr. M.D.N.C. 2007) .  In contrast to the standard for civil contempt, finding a willful violation of the discharge injunction appears to rest on the lower preponderance of the evidence standard.  Cherry, 247 B.R. at 188 n.18.

At present there is "no clear rule" in the Fourth Circuit as to whether an alleged violation of the discharge injunction requires willfulness on the creditor's part, but the Hardy rule has found

increasing acceptance by other courts, including courts in this circuit.  Almond, 2007 WL 1345224 at *5.  This court accordingly assumes, but does not decide, that knowledge and intent, as outlined above, are components of a determination whether the creditor's violation of the discharge injunction was willful and in contempt of the injunction.  And, as to this inquiry as well, the undisputed facts establish by not only a preponderance of the evidence but also by the higher standard of clear and convincing evidence that Ocwen knew the discharge injunction was invoked and intended its actions in violation of it.

There is no question whatsoever that Ocwen's actions establish civil contempt of the court's order.  At the hearing, the court was presented with no evidence that Ocwen has taken any action to correct its records or the reports it makes to credit companies regarding the debtors' loan, either prior to or after receiving the debtors' motion to show cause.  During the period from at least the filing of the debtors' motion to show cause and the hearing on May 26, 2010, the court finds that Ocwen has been in knowing, willful, and flagrant violation of both the discharge injunction and this court's May 23, 2008 order.

### Damages

A bankruptcy court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. § 105(a), to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  This authority includes the issuance of sanctions as necessary, and encompasses both the court's authority to enforce the order of May 23, 2008 and, also, "necessarily includes orders imposing sanctions for violating the discharge injunction."  In re Barbour, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987); see also In re Workman, 392 B.R. at 194 (citing multiple recent cases in which bankruptcy courts

invoked power under §105(a) to sanction parties who violated the discharge injunction). Thus, while § 524 does not explicitly authorize an award of monetary damages for violation of the discharge injunction, damages for those violations – as well as violations of an order of the court – may be awarded under § 105(a). See, e.g., Workman, 392 B.R. at 195.

The duration of time over which Ocwen has maintained an apparent "disconnect" between its actions and the inevitable result of them is appalling. It has been 25 months since entry of the May 23, 2008 order and 21 months since the filing of the debtors' motion to show cause. Ocwen has taken no action to correct its balance or credit reporting. Its response to the court's request for its contentions regarding damages further illuminates Ocwen's apparent inability to grasp the seriousness of its actions and the repercussions of them. Ocwen contends that the sole damages that should be assessed against it are: $400 for the refinancing appraisal, and $1500 in attorney's fees. Ocwen "submits that any and all damages suffered by the [Adams] are fairly resolved" by payment of those sums. Ocwen contends that the debtors took "little action to mitigate any damage" because they made only one attempt to refinance the loan, even though it is ludicrous to suggest that such an effort could possibly have garnered the debtors a refinanced mortgage on more attractive terms, or been anything other than a fruitless and humiliating exercise.

In addition, Ocwen says it "is and will" update its credit reports and give the debtors a copy of the email communication showing that it has done so. That Ocwen still *proposes* to correct its reporting, and has not *yet* given proof of having done so, is mind-boggling. As the final component of Ocwen's proposed resolution of this matter, it would restate the principal balance of the loan as $75,000 as of June 1, 2010 and modify the terms of the loan to provide an interest rate of 5% *beginning* June 1, 2010. In accordance with its proposal, Ocwen would retain the original, high

8

interest rate of 10.8% over the almost-two years in which it erroneously reported the debtors' mortgage as in foreclosure, which, in effect, prohibited the debtors' refinancing at market levels.

Ocwen does not dispute that it has, from late 2007 through virtually all of 2008 and well into 2009, reported the Adams' mortgage as being in foreclosure, despite the fact that no foreclosure proceeding ever was commenced. The statements Ocwen sent to the debtors show that it has regularly assessed foreclosure costs and fees, and applied the debtors' payments to those costs and fees instead of to the principal. *Most recently*, Ocwen informed the Adams by letter dated May 26, 2010, in response to the Adams' inquiry regarding the credit history of their loan over the most recent 12 months, that it had reported the loan as in foreclosure for May, June, July and August of 2009. All during that time, Ocwen purportedly was working with the debtors to modify their loan terms – as a result of the *original* erroneous reporting. Ocwen either intended to hold the debtors hostage to its glacial (and unfruitful) negotiations, or concluded that it could knowingly disregard the responsibilities with which it was charged by both the Bankruptcy Code and the May 23, 2008 order of this court. That it did so, with actual knowledge, for such a prolonged period of time is especially egregious. Ocwen's cavalier attitude toward the discharge injunction, the terms of an order of this court, and the effect of its actions on the debtors is wholly unacceptable. The fact that Ocwen is unwilling to acknowledge the seriousness of this matter even today carries significant weight with the court. As the court informed the parties at the conclusion of the show cause hearing, sanctions are warranted in this matter. It is obvious that only significant monetary sanctions will get Ocwen's attention.

The court now turns to the appropriate sanctions for such violations. The trustee's brief, in which he describes Ocwen's proffer of damages as "woefully inadequate," recommends entry of an

9

order awarding as compensatory damages a declaration that the debtors' debt to Ocwen is satisfied in full and cancelling Ocwen's lien, along with attorney fees and a punitive component of $1000. Although the court will not adopt that recommendation in whole, it will take guidance from it.

1) <u>Compensatory Damages</u>

Ocwen has acknowledged that the debtors are entitled to reimbursement of $400 for the appraisal in connection with the attempted 2008 refinancing, and $1500 for attorney's fees. The court's very conservative estimate of the value of the debtors' time trying to sort through and correct Ocwen's statements, together with the value of their time in court and compensation for the embarrassment of having false, defamatory information published about them, supports a total award of $2500 in compensatory damages, plus attorney's fees of $1500. Ocwen also will be assessed attorney's fees payable to the trustee for his preparation and court time in the amount of $750.

An accurate determination of the balance owing Ocwen by the debtors is essential to finally resolve the issues between the parties. The court requested, and received, contentions by both parties concerning the present mortgage balance. The debtors supplied their counsel's affidavit which claimed that the correct balance, using the contract 10.8% rate, through April 30, 2010, was $71,954. Using a 6% interest rate in 2008, a 5.5% interest rate in 2009 and a 5% interest rate in 2010 yields a balance of $63,702 according to the debtor.

Ocwen submitted the affidavit of Manager Trial Preparation/Discovery, Chomie Neil. The affidavit indicates that Ocwen contends that the balance due on the mortgage as of July 1, 2010, is $77,360.13. Ocwen applied the contract rate of interest of 10.8% in its calculations.

Inasmuch as the 10.8% contract rate is above market, in accordance with the unchallenged proffer of debtor's counsel, and that the continued improper reporting on the part of Ocwen prohibits

the debtors from refinancing the loan at market rate, the court will modify the interest rate as part of the debtors' compensatory damages to 6% - the highest interest rate offered by the debtors at the hearing - as a reasonable market rate for the time period of May 23, 2008 through July 1, 2010. Accepting Ocwen's principal amount owing as of May 23, 2008 of $76,426.43, and applying a 6% interest rate with a $831.88 monthly payment,[3] with $50.59 going into escrow, the approximate payoff on July 1, 2010, would be $65,373.12. The court will, therefore, set the balance owing on July 1, 2010 at $65,373.12.

2) Punitive Damages

The court finds it not only appropriate to award punitive damages, but necessary. Ocwen has given every indication that it is and will remain indifferent to the statutory significance of the discharge injunction and to the express terms of the May 23, 2008 order, unless it is compelled to take note. See Cherry, 247 B.R. 176, 189-90 (discussing cases within the Fourth Circuit in which punitive damages for contempt, and violation of the discharge injunction, were in issue). As the Cherry court points out, the standard by which courts assess the propriety of an award of punitive damages varies, but tends to require some indication of "egregious conduct," "malevolent intent," or "clear disregard of the bankruptcy laws" – in other words, some element indicative of a "specific intent to violate an order or discharge injunction." Under any of these measurements, Ocwen's intentional, unfounded, prolonged violation of the discharge injunction and this court's order warrants punitive sanctions.

---

[3] Eight hundred thirty-one dollars and eighty-eight cents ($831.88) is the regular contractual monthly payment. The debtors actually averaged eight hundred sixty-five dollars and ninety-two cents ($865.92) each month during the period after May 23, 2008.

An appropriate measure of punitive damages for Ocwen's violation of the discharge injunction and the court's order of May 23, 2008 is a sanction in the amount of $66,300. This amount represents $100 per day from September 12, 2008, which is the date on which Ocwen was served with the debtors' motion to show cause, through the date of entry of this order. These damages will not accrue during the fourteen days following the date of entry of this order, but will resume, if necessary, at $100 per day, as outlined below, if Ocwen does not fully comply with the terms that follow. A punitive sanction of $100 per day for Ocwen's actions over the duration of this matter is commensurate with its offense. The significant total derives from the duration of the offense, which was decidedly within Ocwen's own control.

Accordingly, no later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay FIFTEEN HUNDRED DOLLARS ($1500) in attorney's fees and expenses to DOUG WICKHAM, counsel for the debtors, P.O. Box 527, Raleigh, NC, 27602-0527.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay SEVEN HUNDRED FIFTY DOLLARS ($750) in attorney's fees and expenses to the standing chapter 13 trustee in this case, JOHN F. LOGAN, P.O. Box 61039, Raleigh, NC, 27661-1039.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) in compensatory damages and expenses to CRAIG L. AND MONICA L. ADAMS, 2150 Highway 97, Zebulon, NC 27597.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall pay SIXTY-SIX THOUSAND THREE HUNDRED DOLLARS ($66,300), as a punitive sanction, to CRAIG L. AND MONICA L. ADAMS, 2150 Highway 97, Zebulon, NC 27597.

No later than fourteen (14) days from the date of this order, Ocwen Loan Servicing, LLC shall provide proof to the debtors' counsel, the trustee, and to the court that the following actions have been taken:

1) Ocwen has reported to all three major credit reporting companies that the debtors' loan with Ocwen was in bankruptcy from the debtors' petition date through the date of discharge; was current from the date of discharge; and remains current as of the date of this order;

2) Ocwen has adjusted its records to reflect that the debtors have a principal balance remaining, as of July 1, 2010, of $65,373.12, to be paid at 6% interest, fixed rate, over the remaining life of the loan.

In the event that Ocwen fails to comply with the payment of any of the damages awarded herein within fourteen (14) days of the date of this order, said sum shall be applied as a setoff against the amount owing to Ocwen and secured by the mortgage. Upon failure of Ocwen to comply with such payments, the debtors will supply the court with a verified statement attesting to such failure and the court will provide the debtors with an order to be recorded in the Wake County Register of Deeds Office setting forth the set off and the new balance.

For each day after the expiration of fourteen (14) days after the date of entry of this order, if any provision of this court's order remains unsatisfied, additional punitive damages will be assessed against Ocwen in the amount of $100 per day, payable to the Clerk of Court, 300 Fayetteville Street, Suite 209, P.O. Box 1441, Raleigh, NC 27602, until all terms of this order are satisfied.

**SO ORDERED**.

**END OF DOCUMENT**